LINDSEY v. PASCO POWER & WATER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 17, 1913.)

No. 2,133.

**1.** CORPORATIONS (§ 308*)—OFFICERS—RIGHT TO COMPENSATION.

A promoter of a corporation, who was also a stockholder and director, cannot recover from the corporation for personal services rendered to it, in the absence of any contract therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

**2.** CORPORATIONS (§ 189*)—STOCKHOLDERS—CLAIMS AGAINST CORPORATION—SET-OFF.

An assessment made on the stock of a corporation, for which the stockholders are not personally liable, cannot be set off by the corporation against a debt due from it to a stockholder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. § 189.*]

**3.** CORPORATIONS (§ 99*)—ISSUE OF STOCK—CONSIDERATION.

The ownership of stock by a stockholder, to whom it was issued by the corporation in part consideration for a loan made to it, cannot be questioned for want of consideration by a third person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. § 99.*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; C. H. Hanford, Judge.

Suit in equity by F. T. Blunck against the Pasco Power & Water Company and others; James Lindsey, intervener. From a decree against the intervener, he appeals. Reversed.

James A. Haight, of Seattle, Wash., and Martin L. Pipes, of Portland, Or., for appellant.

Bausman & Kelleher, of Seattle, Wash., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The question in this case is whether the intervener is entitled to judgment against the Pasco Power & Water Company (the transfer to its successor, the Burbank Power & Water Company, being subject to that contingency) for three certain items of charge, to wit: $4,822.67, the alleged balance due on two certain loans alleged to have been made by the intervener to a certain corporation called the Continental Construction Company; $2,250, alleged to have been due by that company to the intervener for nine months' salary at $250 a month for his personal services; and $2,-

812.50, the alleged value of 450 shares of the stock of a certain other corporation called the Snake River Irrigation Company.

The record shows that in or about the year 1904 the intervener and one Frame entered into a scheme for the purpose of appropriating a portion of the waters of Snake river, and applying them to the irrigation of arid land in the vicinity of its junction with the Columbia river. It was an extensive scheme, and would necessarily require a large amount of money to carry it out successfully, very little of which either of the promoters appears to have had.

The first thing that seems to have been done in pursuance of the project was the procurement of an individual named· Terry to file a notice of appropriation of the desired waters, shortly after which Terry conveyed whatever right accrued to him under such notice of appropriation to Frame. The next thing that appears to have been done was the incorporation of the construction company mentioned, the capital stock of which was fixed at $1,500,000, divided into 15,-000 shares of the par value of $100 each, one share of which was issued to Frame, one to James P. Stapleton, the attorney who prepared the organization papers, and one to E. S. Jackson, none of whom paid any money for his stock. The remaining 14,997 shares were subscribed for by the intervener, Lindsey, who paid no money therefor, but, by agreement between Frame and himself, the right to the water secured by the appropriation, whatever it was, was to be conveyed to the construction company by Frame in payment for the stock issued to them. The next step in the proceeding, and as a part of the scheme, was the incorporation of the Snake River Irrigation Company and the procurement by Frame of certain contracts with certain locators of certain desert lands to which, in part, it was proposed to supply the appropriated waters. The irrigation company also entered into a contract with the Northern Pacific Railroad Company, under which certain of its lands covered thereby were contracted to be sold by Frame for the irrigation company and similarly supplied, and the moneys received under such contracts were paid in by him to it, which moneys seem to have been the only funds ever put into the enterprise by Frame. The record shows that Lindsey did, however, advance to the construction company $5,500 in two sums, both of which were paid by him into a bank in Portland, Or., to its credit, $649.19 of which, however, he subsequently drew out for his own use, charging himself therewith on the books of the company. As an inducement to Lindsey to make those loans and as part consideration therefor, there were issued to him 450 shares of the stock of the irrigation company.

[1] The record further shows that for nine months Lindsey had personal charge of the construction of the irrigating works carried on by the corporations, which will and should be regarded as one for the purposes of this case; but neither of the corporations engaged in the scheme, of both of which Lindsey was a director, ever authorized the payment to him of any salary or other compensation; nor does it appear that at any time during his connection with the project did he ever expect to receive any salary for his· personal serv-

ices, but, on the contrary, there are a number of circumstances disclosed by the evidence tending to show that his services, as well as those of Frame in selling the lands referred to, were understood by all parties then in interest to be without any other compensation than the benefit that they might derive by reason of their interest in the undertaking. Only after it failed in the hands of the promoters, and the two corporations procured to be organized by them became insolvent, and all of their property rights had passed to the Pasco Power & Water Company, did Lindsey assert any claim for his personal services rendered in behalf of the building of the irrigation works. Under such circumstances we regard it as clear that his claim for salary is without merit, and nothing further need be said about it. See Montana-Tonapah Mining Co. v. Dunlap, 196 Fed. 612, 116 C. C. A. 286, decided by this court October term, 1912, and cases there cited.

The record shows, and it is undisputed, that both the construction company and the irrigation company became insolvent and wholly unable to carry on the undertaking; the indebtedness being estimated at about $50,000. In that condition of affairs, at a meeting of the directors of the irrigation company, it was proposed to levy an assessment on the stock. The good faith of that proposal is questioned in the evidence, as well as in the brief of the appellant; but that matter is unimportant here. The motion to levy such assessment for the purpose of paying the debts was rejected, and instead the proposition that had theretofore been made by one Parry to take over the entire property of both companies, in consideration of the payment by the vendee of all of the valid indebtedness of both companies, was adopted and carried into effect; the conveyance, by Parry's direction, being made to the appellant Pasco Power & Water Company, which he was instrumental in bringing into existence, and which, according to the record, subsequently paid all of the indebtedness of both companies, except the claim of the appellant, Lindsey.

[2] The refusal to pay the amount remaining due for the advances made by him to the construction company is based mainly upon the fact that a year or more before the conveyance to the Pasco Company an assessment was levied upon the stock of the construction company, the amount of which upon the stock thereof then held by Lindsey amounted to $10,800, for the nonpayment of which by him all of his said stock was sold by the construction company, from all of which it is contended by the appellees that the Pasco Company is entitled to offset the amount of his said assessment against the amount due him by the construction company for his advances to it.

A conclusive answer to the contention is that the levy of the assessment was upon the stock, which, under the law (if the assessment was valid), was bound for it, and which, as has been said was undertaken to be sold by the company in payment of the assessment. Manifestly, the assessment imposed no personal liability upon Lindsey; and therefore he was under no personal obligation to pay it. It is therefore unnecessary to consider the claim made by the appellant that the evidence shows that the assessment, as well as the sale of his stock in the construction company, was not only unauthorized, but

fraudulent and void; nor is it necessary to consider the contention on his part that the appellees are in no position to avail themselves of any rights the construction company may have had in respect to that assessment.

There remains to consider only the stock held by the appellant, Lindsey, in the irrigation company, to wit, 450 shares.

[3] It is contended on the part of the appellees, first, that Lindsey got the stock without consideration; and, second, that it was of no value.

To the first objection it is sufficient to say that it appears from the evidence that it was issued to him as a part consideration for the money he loaned to the construction company; and it is not for the appellees to question the sufficiency of the consideration.

The answer to the suggestion that the stock was without any value is that the appellee Pasco Power & Water Company, according to the evidence, agreed to pay, and did pay, about $50,000 for the property in which the irrigation company was at least a part owner; and the evidence further shows that a portion of the stock of the irrigation company was actually sold to Parry for $6.25 per share—its par value being $100. We think this fact, no contradiction of which we find in the record, sufficient to warrant the allowance of a like sum per share to the appellant for his 450 shares.

It results from what has been said that the judgment dismissing the action must be and is reversed, and the cause remanded to the court below, with directions to render judgment for the appellant as hereinabove indicated.